MERCHANTS CO-OPERATIVE BANK *vs.* JOSEPHINE PASQUALUCCI.

Norfolk.   January 14, 1935. — January 29, 1935.

Present: CROSBY, FIELD, LUMMUS, & QUA, JJ.

*Coöperative Bank. Mortgage,* Of real estate: coöperative bank mortgage, conveyance of land subject to mortgage, foreclosure, deficiency after foreclosure. *Surety. Contract,* Novation. *Notice. Practice, Civil,* Requests, rulings and instructions, Rules of court. *Limitations, Statute of. Merger. Evidence,* Relevancy. *Words,* "Borrower."

It was the intent of the provisions of G. L. c. 170, § 29, respecting the reduction of a loan, secured by a coöperative bank mortgage and a pledge of shares, by application of the value of the shares toward payment of the principal and the issue of new shares in a less number proportionate to the unpaid balance of principal, to preserve the original mortgage and note as valid and binding upon all signatories thereon.

The original maker of a note made in 1926 and secured by a coöperative bank mortgage was liable for a deficiency remaining after a sale in foreclosure in 1932, although in 1926 he had conveyed his equity in the real estate and transferred his shares in the bank to a third person, whom the bank thereafter had treated as the mortgagor and the person with whom it was dealing and who in 1929 had effected such a reduction of the loan under said § 29.

The word "borrower" as used in said § 29 was applicable to the third person in the circumstances above described.

In the circumstances above described, no interference with any rights as a surety which the original mortgagor may have had was shown.

The facts above stated did not require a finding that a novation was effected between the bank, the original mortgagor and the third person either at the time when the equity in the real estate and the shares were transferred to the third person by the original mortgagor or at the time when the third person effected the reduction of the loan.

Section 32 of G. L. c. 170 did not require that, in the circumstances above described, a notice should be given to the original mortgagor before a forfeiture of the shares; notice to the third person, the then holder of the shares, was sufficient.

At the hearing of an action by the bank against the original mortgagor to recover the amount of such deficiency, a specification, under a request by the defendant for a ruling that upon all the evidence the plaintiff could not recover, that "the plaintiff has failed to comply with the provisions of G. L. c. 170," was insufficient, under the requirements of Rule 27 of the District Courts (1932), to raise the question of law, whether a finding was warranted that due notice of such a forfeiture was given.

Said § 32 is not a statute of limitations.

The period of limitation for the action above described did not begin to run until a balance was struck in accordance with said § 32.

At the hearing of the action above described, it appeared that the real estate was purchased by the plaintiff bank at the foreclosure sale. *Held*, that there was no merit in a contention by the defendant that there was "a merger which extinguished the mortgage debt."

In the action above described, there was no merit in a contention by the defendant that it was error to admit in evidence at the hearing the certificate of entry to foreclose the mortgage, the foreclosure deed and the affidavit concerning the foreclosure, in that, because the directors of the plaintiff bank had authorized a foreclosure of a mortgage "of" the third person as "borrower," there "was no authority for the foreclosure of defendant's mortgage," and the documents admitted "concerned unauthorized actions by the plaintiff and were void and irrelevant."

CONTRACT. Writ in the District Court of East Norfolk dated November 22, 1932.

The action was heard in the District Court by *Johnson*, J. Exhibit 3 was a certificate of entry to foreclose the mortgage held by the plaintiff. Exhibit 4 was a foreclosure deed from the plaintiff as mortgagee to itself and an affidavit by an officer of the plaintiff concerning the foreclosure. It appeared that the directors of the plaintiff had authorized a foreclosure of "the mortgage of the . . .

borrower . . . Lillian Carella." Other material facts are stated in the opinion.

The defendant's sixteenth request for ruling was that "plaintiff cannot recover . . . for the following reasons," followed by sundry specifications, including specification "f" quoted in the opinion.

The judge found for the plaintiff in the sum of $891.12 and interest and reported the action to the Appellate Division for the Southern District, who ordered the report dismissed. The defendant appealed.

In her brief, the defendant contended that it was error to refuse to rule that the plaintiff could not recover because, among other things, "the facts in this case, the plaintiff bank having purchased their own security, clearly show a merger which extinguished the mortgage debt. 'Where the same person who holds the mortgage has become the holder of the equity of redemption, with no intervening interests or encumbrances in any other person, the mortgage is merged and the debt extinguished.'" She also contended that there was error in the admission of Exhibits 3 and 4, stating: "There was no authority for the foreclosure of defendant's mortgage as the authority voted by the bank was to foreclose the mortgage of the borrower 'Lillian Carella.' Therefore Exhibits 3 and 4 concerned unauthorized actions by the plaintiff and were void and irrelevant. Striking out these exhibits, as should be done, the plaintiff's whole case, which is for a balance after a foreclosure, fails."

*J. L. Sheehan,* for the defendant.

*R. M. Smith, (L. Makepeace* with him,) for the plaintiff.

QUA, J. This is an action of contract brought by a coöperative bank established and operating under G. L. c. 170 to recover from the original maker of a mortgage note a deficiency remaining unpaid after foreclosure of the mortgage and application to the amount due of the proceeds of the foreclosure sale. On August 9, 1926, the defendant borrowed $5,000 from the plaintiff (hereinafter called the bank) and gave to the bank a real estate mortgage for that sum in the statutory coöperative bank form and a

"Real Estate Loan Note" in accordance with G. L. c. 170, § 26, wherein she pledged to the bank twenty-five shares of its capital stock "as collateral security" for the repayment of the loan and promised to pay the bank the monthly dues on the shares until the shares should be worth $200 each or the loan should be otherwise repaid. On October 9, 1926, at the request of the defendant the shares were transferred to one Carella. The report does not expressly state that the mortgaged real estate was conveyed to Carella at this time, but the defendant asserts in her brief that it was so conveyed, subject to the mortgage, and the plaintiff's brief also assumes a conveyance to Carella subject to the mortgage. We therefore assume that such was the fact. There is evidence from what appear to be the bank's records of accounts and from votes of the directors that thereafter the bank treated Carella as the mortgagor and as the person with whom it was dealing. Nearly three years later, on August 12, 1929, and in accordance with G. L. c. 170, § 29, Carella had the shares cancelled and their then value applied as a credit on the original loan. New shares in a new series were issued to Carella and pledged by her to the bank, and an "Agreement for Reduction of Loan" was executed in the form set forth at length in said § 29. Thereafter there was a breach in the condition of the mortgage, and on August 11, 1932, the shares then standing pledged for the loan were declared forfeited by the bank (G. L. c. 170, § 32); their value was credited on account of the loan, and the real estate was sold, resulting in the deficiency for which the action is brought.

There was a finding for the bank. The defendant claims that she is not liable, and summarizes her reasons substantially as follows: (1) Because the cancellation of the original shares without her consent "released her as it destroyed the coöperative relation necessary for a debt to such banks"; (2) because by the sale of the equity of redemption subject to the mortgage the defendant was placed in the position of a surety whose rights have been prejudiced by the "destruction of her collateral" and by the change in the terms of the original mortgage obliga-

tion which was effected by the application to the loan under § 29 of the value of the original shares and the acceptance of new shares carrying lesser monthly payments as collateral for the balance remaining unpaid; (3) because the facts show a novation among the bank, Carella and the defendant, either in 1926 when the original shares were transferred to Carella or in 1929 when the original shares were applied on account of the loan and new shares were issued; (4) because the bank has not complied with certain provisions of G. L. c. 170 claimed to be conditions precedent to the bringing of suit; (5) because the action is barred by the statute of limitations and by the requirement of speedy action in G. L. c. 170, § 32; and (6) because the bank by buying in at the foreclosure sale extinguished the mortgage debt by merger.

In order to deal with these defences, it is necessary first to inquire into the purpose and to ascertain the true construction of the last two paragraphs of G. L. c. 170, § 29, under which the bank acted. These paragraphs were inserted in the law governing coöperative banks by St. 1912, c. 623, § 27. The intent was to provide a simple and inexpensive method by which a borrower, whose shares by reason of payment of dues and accretion through dividends had acquired a substantial value, could apply that value on account of his loan, reducing the loan by the value of the shares, and at the same time could take out new shares in reduced number proportionate to the unpaid balance of the reduced loan. The result of this procedure is to reduce the monthly payments required from the borrower and at the same time to extend the time when the loan will finally be paid by the maturity of the shares pledged to secure it. The plan is of advantage to a considerable class of borrowers who have acquired a substantial equity in their properties by payment of dues on the shares originally pledged, but who, through misfortune or otherwise, find it difficult or impossible to continue the monthly payments at the larger amount originally fixed. Before this change in the law there was no provision by which this result could be brought about without paying off the original loan in its entirety and apply-

ing for a new one for a smaller amount. This involved an entirely new mortgage. It is distinctly the intent of the amended law to preserve the original mortgage and note as valid and binding upon all signatories thereto. It speaks of "the loan remaining unpaid after the application of the [share] value as aforesaid." The new shares are to be pledged "as security for the balance of the loan." The form for the borrower to sign included in the amended section refers to the application of the value of the original shares "as a credit upon this note [i.e., the original note], leaving a balance due and unpaid of . . . ." The last paragraph reads as follows: "Neither the note evidencing the loan nor the mortgage securing the same shall be prejudiced by the application of the value and the change of shares, notwithstanding the fact that a provision for such application and change was not originally made in the note or mortgage, and both note and mortgage shall continue to be held by the bank as good and sufficient security for the balance remaining unpaid. After the application of the value as a credit, the amount of the loan shall forthwith be reduced to an equal extent, and the borrower shall thereafter be liable for only the reduced amount and any arrearages or penalties occasioned by his own default." We cannot adopt the defendant's contention that § 29 does not apply so as to hold the maker of the original note where there has been a conveyance of the equity in the mortgaged property subject to the mortgage. The section itself mentions no such exception. There is nothing in the statutes relating to coöperative banks or in the general plan under which they operate which prevents the conveyance of the equity of redemption subject to the mortgage. *Lowell Co-operative Bank* v. *Dafis*, 276 Mass. 3. The Legislature must have had this possibility in mind when it passed the amendment. Though the word "borrower" is used throughout this section, it could not have been intended to limit its meaning to the signer of the original note. In *Lowell Co-operative Bank* v. *Dafis*, 276 Mass. 3, it was held that the word "borrower" in § 32 referred to the owner for the time being of the shares, and it was said, at page 9, that its meaning is the same in § 29. We see nothing

in § 33 of the revised c. 170 inserted in the General Laws by St. 1933, c. 144, which section takes the place of the portion of former § 29 under consideration, which should cause us to alter the construction here given to the former § 29. The statute of 1933 does not apply to this case, which is governed by said § 29.

The construction which we give to G. L. c. 170, § 29, overrides the defences based upon cancellation of the original shares without consent of the defendant, upon alleged interference with the defendant's rights as a surety and upon any novation in 1929. Section 29 leaves the defendant liable for the balance of her original note in spite of the "Agreement for Reduction of Loan." We do not intimate whether or not there would be anything in these defences apart from that section. That section was in force when the defendant signed the original note and mortgage, and she is bound by it.

There is nothing in the record which requires a finding that there was a novation in 1926 when the original shares were transferred to Carella. It was not a necessary inference that the bank agreed to look to Carella alone and to release the defendant from her note. *Stowell* v. *Gram,* 184 Mass. 562. *Owen Tire Co.* v. *National Tire & Rubber Co.* 244 Mass. 522.

There was no requirement of law that the bank should give twenty-one days notice to the defendant under G. L. c. 170, § 32. We think such notice could have been given to Carella as the owner of the shares then pledged for the loan. *Lowell Co-operative Bank* v. *Dafis,* 276 Mass. 3, 7. It is doubtful whether the defendant intends to argue that no such notice was given to Carella. If that point is open to the defendant at all, it must be under her request numbered 16, specification "f," which reads, "That the plaintiff has failed to comply with the provisions of G. L. c. 170." Request numbered 16, of which specification "f" is a part, is a request for a ruling upon all the evidence. Under such requests specifications are required by Rule 27 of the District Courts (1932). Specification "f" is insufficient under the rule. Chapter 170 of the General Laws is a complete codification of the statute law relative to coöperative banks. It contains

forty-nine sections. A reference to the chapter as a whole is not enough to call specific attention to a special kind of notice required by a single section. See *Holton* v. *American Pastry Products Corp.* 274 Mass. 268; *Castano* v. *Leone*, 278 Mass. 429, 431.

The action is not barred by any statute of limitations. The defendant's original note was payable in instalments. The loan as a whole did not become due and payable until after the shares pledged as collateral had been forfeited, their value credited and a balance struck as required by G. L. c. 170, § 32. Section 32 is not, as the defendant contends, a statute of limitations.

There is nothing in the defendant's claim of merger. There was no error in admitting Exhibits 3 and 4.

We have examined all questions open on the record and argued by the defendant, and we find no error.

*Order dismissing report affirmed.*